**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAMES DANIEL FUENTES, | No. 09-56903 |
| Petitioner - Appellee, | D.C. No. 5:09-cv-01041-CJC-RZ |
| v. | |
| FERNANDO GONZALEZ, Warden, | MEMORANDUM[*] |
| Respondent - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted October 14, 2011
Pasadena, California

Before: D.W. NELSON and CALLAHAN, Circuit Judges, and ERICKSON, Chief
District Judge.[**]

Fernando Gonzalez, Warden, appeals the district court's decision to grant

James Fuentes's petition for habeas corpus. Fuentes was convicted in the

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Ralph R. Erickson, Chief District Judge for the U.S.
District Court for North Dakota, Fargo, sitting by designation.

California Superior Court of aiding and abetting Melecio Reyes in the first-degree murder of Francisco Ferreira in 2003. We have jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291 and 2253. We conclude that the California Court of Appeal was objectively reasonable in upholding Fuentes's conviction and accordingly reverse the district court's grant of Fuentes's habeas petition.

Fuentes's petition is subject to the provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. §§ 2241-2255. Under Section 2254(d) of AEDPA, where a state court decides the merits of a petitioner's constitutional claim, a federal court may grant habeas relief with respect to that claim only if the state decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case certainly would qualify as a decision 'involv[ing] an unreasonable application of . . . clearly established Federal law.'" *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000). A state court's application of "clearly established Federal law . . . must be objectively

unreasonable," *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2002); *see also Williams*, 529 U.S. at 411, not just "incorrect or erroneous," *Lockyer*, 538 U.S. at 75. The "clearly established Federal law" upon which Fuentes and the district court relied was *Jackson v. Virginia*, 443 U.S. 307 (1979), under which "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original).

Since the district court granted Fuentes's petition in October 2009, the Supreme Court decided *Harrington v. Richter*, -- U.S. --, 131 S. Ct. 770 (2011), *Cullen v. Pinholster*, -- U.S. --, 131 S. Ct. 1388 (2011), and *Cavazos v. Smith*, -- S. Ct. --, 565 U.S. --, 2011 WL 5118826 (No. 10-1115, Oct. 31, 2011) (per curiam). In *Richter*, the Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in that law. If fairminded jurists could so disagree, habeas relief is precluded. *Richter*, 131 S. Ct. at 786. In *Pinholster*, the Court reiterated that AEDPA requires additional deference to state court determinations on habeas, and that "[w]e have said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Pinholster*, 131 S. Ct. at 1410-11 (quoting *Richter*, 131 S. Ct. at 785) (emphasis in *Richter*). In its most recent post-AEDPA

3

habeas decision, *Cavazos*, the Supreme Court reversed this Court's decision to grant a writ on *Jackson* grounds, reiterating that juries, not judges, must weigh competing evidence and decide whether the prosecution's theory of a case is correct. *Cavazos*, 2011 WL 5118826 at *1, 3-5.

Under California law, a person aids and abets a crime where he (1) knows the "unlawful purpose of the perpetrator," (2) intends to commit, encourage, or facilitate the crime, and (3) "by act or advice aids, promotes, encourages or instigates" the crime. *People v. Marshall*, 15 Cal. 4th 1, 40 (1997) (quotation marks and citation omitted). The trial evidence showed that in June 2003, Fuentes accompanied Melecio Reyes, a fellow member of the West Side Verdugo ("WSV") gang, in a car to the house of Francisco and Ector Ferreira. (A year earlier Reyes had shot Ector and a friend in a gang-related altercation near the Ferreiras' house.) Reyes and Fuentes drove past Francisco, who was working on his car in front of his house, stopped, reversed, and pulled up next to Francisco. Reyes reached in his lap, pulled up a gun, and began shooting at Francisco. Fuentes, who was in the front passenger seat, leaned back at the time Reyes began to shoot. Reyes and Fuentes then sped away and were stopped by the police a short time later; Fuentes was still in the passenger seat but the gun used in the shooting was missing.

The State's gang expert testified regarding the structure, culture and hierarchy of the WSV gang, including that Reyes would not have shot Francisco

4

without first informing Fuentes, and that Fuentes would not have continued to correspond with, and show respect for, Reyes after the shooting if Reyes had "disrespected" Fuentes by keeping him in the dark. The gang expert also testified that Fuentes, an active "up and comer" in the WSV gang, would gain status in the gang as a result of the shooting, and that the shootings benefitted the WSV gang, which was trying to establish turf in the area of the shooting. It was objectively reasonable for the Court of Appeal to conclude that the trial evidence supported the jury's findings that Fuentes knew of Reyes's plan to murder Francisco, and that he intended to, and did, aid in that murder.

The district court determined that certain alternative inferences were reasonable, but neither *Jackson* nor AEDPA allows a habeas court to pick and choose among reasonable inferences and substitute its own judgment for the jury's. *See Jackson*, 443 U.S. at 326 ("A federal habeas court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."); *Cavazos*, 2011 WL 5118826 at *1 (*Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."); *id.* at *4-5 & n.1; *Richter*, 131 S. Ct. at 786 (explaining that

5

AEDPA prohibits a court from "treat[ing] the unreasonableness question as a test of its confidence in the result it would reach under de novo review").

This Court's decisions in *Mitchell v. Prunty*, 107 F.3d 1337, 1342 (9th Cir. 1997), *overruled on other grounds*, *Santamaria v. Horsley*, 138 F.3d 1280 (9th Cir. 1998) (en banc), *Garcia v. Carey*, 395 F.3d 1099, 1103 (9th Cir. 2005), and *Briceno v. Scribner*, 555 F.3d 1069, 1078-79 (9th Cir. 2009), do not support granting Fuentes habeas relief. Not only do those cases pre-date *Cavazos*, *Richter*, and *Pinholster*, they concerned evidence of gang membership or generic gang expert testimony where there was no other evidence to prove intent. In this case, the State presented evidence about Fuentes's role in and actions during the shooting, as well as specific and thorough gang expert testimony. *Juan H. v. Allen*, 408 F.3d 1262, 1276 (9th Cir. 2005), also is inapposite because there the defendant "did not do or say anything before, during or after the shootings from which a reasonable factfinder could infer an intent or purpose" to aid and abet in murder.

We appreciate that the State's case here relied heavily on circumstantial evidence, and that this evidence may have supported inferences other than those the jury drew. However, under the deference required by AEDPA, the only relevant question is whether the Court of Appeal's conclusion that sufficient evidence supported Fuentes's conviction was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any

6

possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87. Because

Fuentes has not met this high threshold, the district court erred in granting

Fuentes's habeas petition.

**REVERSED**.